UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VINCENT TORMENIA,

    Plaintiff,

v.                                                                 CASE NO. 8:18-cv-2347-T-23TGW

LVNV FUNDING, INC., et al.,

    Defendants.
_____/

## **ORDER**

In this consumer protection action, LVNV Funding moved (Doc. 43) to compel arbitration. Because the motion and Vincent Tormenia's response (Doc. 47) caused considerable confusion, an April 22, 2019 order (Doc. 50) directed LVNV to reply to Tormenia's response and ordered Tormenia to show cause (1) why the complaint should not be dismissed and (2) why his attorneys should not face sanction under Rule 11, Federal Rules of Civil Procedure.

Tormenia and LVNV stipulate (Doc. 51) to dismissal without prejudice. Also, Tormenia moved first (Doc. 52) to dismiss Credit Control without prejudice and later moved (Doc. 58) to dismiss Credit Control with prejudice. Although Credit Control fails to respond to the motion to dismiss without prejudice, Credit Control opposes (Doc. 59) dismissal with prejudice. Additionally, Credit Control moves (Doc. 54) to recover an attorney's fee.

**BACKGROUND**

Tormenia sued (Doc. 1) LVNV and another defendant under three consumer protection statutes, including the Telephone Consumer Protection Act. However, Tormenia amended the complaint (Doc. 14) and omitted the second defendant. A review of TCPA actions litigated by Tormenia's attorneys reveals that Tormenia's attorneys have filed an almost identical complaint in dozens of other TCPA actions. (Doc. 50 at 1)

More than six months after suing, Tormenia moved again (Doc. 25) for leave to amend the complaint. The motion explained that Tormenia sought "to clarify (1) [that Tormenia] was not the account holder and (2) [that LVNV] may have been attempting to collect on multiple accounts. Further, [Tormenia] also endeavors to add Credit Control . . . as a co-defendant." A February 1, 2019 order (Doc. 27) granted leave to amend the complaint.

Although Tormenia's second amended complaint (Doc. 28) adds Credit Control as a defendant (by repeating against Credit Control allegations that are almost identical to the boilerplate allegations against LVNV),[1] the second amended complaint fails to mention either an additional account holder or "multiple accounts." Further, Tormenia replaced the allegation:

---

[1] For example, the amended complaint alleges that "LVNV . . . has been sued in federal court where the allegations include: calling an individual using an ATDS after the individual asked for the calls to stop" (Doc. 14 at ¶ 57) and that LVNV's "corporate policy and procedures are structured as to continue to call individuals like [Tormenia], despite these individuals revoking any consent [LVNV] may have mistakenly believed it had" (Doc. 14 at ¶ 62). The second amended complaint repeats those allegations and substitutes Credit Control for LVNV. (Doc. 28 at ¶¶ 81, 89)

> In or about July of 2016, [Vincent Tormenia] spoke to . . . LVNV . . . and told [LVNV] not to call him regarding this debt as the debt had been previously discharged through a bankruptcy proceeding[,]

(Doc. 14 at ¶ 29) with the allegation:

> In or about 2017, [Vincent Tormenia] began receiving calls from, and on behalf of . . . [LVNV]. [LVNV and Credit Control] were calling [Vincent Tormenia] in attempt to collect on a consumer debt(s). [Vincent Tormenia] informed [LVNV and Credit Control] he was not the account holder of the account(s) at issue and was not responsible for the alleged debt(s) and to stop calling.

(Doc. 28 at ¶¶ 33–35) The second amended complaint omits mention of a July 2016 call or bankruptcy, and Tormenia never requested leave to amend (Doc. 25) to either change a date or remove the mention of bankruptcy.

Also, the second amended complaint includes the following allegations:

> [LVNV and Credit Control] robocalled [Vincent Tormenia] over 300 times.
>
> LVNV . . . made at least one call to (917) 749-8935[,] . . . made at least one call to (727) 367-8284[,] . . . made at least one call to (917) 749-8935 . . . using an ATDS[,] . . . made at [sic] seventy-five (75) calls to (917) 749-8935[,] . . . made at [sic] seventy-five (75) calls to (727) 367-8284[,] . . . made at least seventy-five (75) calls to (917) 749-8935 using an ATDS[,] . . . made at least one hundred and fifty (150) calls to (917) 749-8935[,] . . . made at least one hundred and fifty (150) calls to (727) 367-8284[,] . . . made at least one hundred and fifty (150) calls to (917) 749-8935 using an ATDS[,] . . . made at least three hundred (300) calls to (917) 749-8935[,] . . . made at least three hundred (300) calls to (727) 367-8284[, and] . . . made at least three hundred (300) calls to (917) 749-8935 using an ATDS. Each call [LVNV] made to (917) 749-8935 in the last four years was made using an ATDS.
>
> Credit Control made at least one call to (917) 749-8935[,] . . . made at least one call to (727) 367-8284[,] . . . made at least one call to (917) 749-8935 . . . using an ATDS[,] . . . made at [sic] seventy-five (75) calls to (917) 749-8935[,] . . . made at [sic] seventy-five (75) calls to (727) 367-8284[,] . . . made at least seventy-five (75) calls to (917) 749-8935 using an ATDS[,] . . . made at least one hundred and fifty (150) calls to (917) 749-8935[,] . . . made at least one hundred and fifty (150) calls to

> (727) 367-8284[,] . . . made at least one hundred and fifty (150) calls to (917) 749-8935 using an ATDS[,] . . . made at least three hundred (300) calls to (917) 749-8935[,] . . . made at least three hundred (300) calls to (727) 367-8284[, and] made at least three hundred (300) calls to (917) 749-8935 using an ATDS. Each call . . . Credit Control . . . made to (917) 749-8935 in the last four years was made using an ATDS.
>
> [LVNV] has caused approximately three hundred (300) calls to [Vincent Tormenia's] aforementioned cellular telephone numbers since in or about 2017, which will be established exactly once [LVNV] turns over their dialer records.
>
> [Credit Control] has made approximately three hundred (300) calls to [Vincent Tormenia] aforementioned cellular telephone numbers since in or about 2017 which will be established exactly once [Credit Control] turns over their dialer records.

(Doc. 28 at ¶¶ 3, 39–64, 75, 78)

Four months after appearing in the action (Doc. 15), LVNV moved (Docs. 41, 43) to compel arbitration. "The facts," LVNV explained, "are not complex." (Doc. 43 at 2) But contrary to the fundamental premise of the action — that the defendants' harassing debt collection calls harmed Vincent Tormenia — LVNV asserts that:

> [Vincent Tormenia's] wife (Rosaria Tormenia) incurred a financial obligation to CreditOne Bank (the "Debt"). Mrs. Tormenia subsequently fell behind on payments owed on the Debt, and the Debt went into default as a result of Mrs. Tormenia's non-payment.

(Doc. 43 at 2) In other words, although neither Rosaria Tormenia nor a debt owed by her appeared in a pleading, motion, affidavit, declaration, exhibit, or other paper in this action, LVNV moved to compel arbitration purportedly stipulated to by Rosaria Tormenia. And rather than highlight that discrepancy, Vincent Tormenia argued (Doc. 47) that he was not bound by his wife's arbitration agreement.

- 4 -

Because of the confusion, an April 22, 2019 order (Doc. 50) directed LVNV to reply to Tormenia's response.  Further, the April 22 order directed Tormenia to explain (1) why neither Rule 8(a)(2) nor Rule 12(b)(6), Federal Rules of Civil Procedure, compel dismissal and (2) why Tormenia's attorneys should not face sanction under Rule 11 for failing to conduct a pre-suit "inquiry reasonable under the circumstances."

Tormenia and LVNV stipulated (Doc. 51) to dismissal without prejudice.  Credit Control, however, refused Tormenia's offer of dismissal without prejudice.  Instead, Credit Control demanded dismissal with prejudice.  Further, Credit Control conditioned a stipulation on Tormenia's attorneys either paying Credit Control's attorney's fee and costs or apologizing to Credit Control "for filing a false and baseless complaint and wrongfully disparaging [C]redit [C]ontrol."  (Doc. 59-1)  Tormenia moved (Doc. 52) to dismiss Credit Control without prejudice, and Credit Control failed to respond.

Credit Control moves (Doc. 54) for an attorney's fee and costs.  Credit Control's motion, which fails to support the stated version of events with an affidavit or declaration, asserts that Tormenia's attorneys continued to pursue claims against Credit Control even after Credit Control's Director of Litigation Management informed Tormenia's attorneys that Credit Control could identify no more than one call to Tormenia.  Tormenia opposes (Doc. 62) Credit Control's motion and moves (Doc. 58) to dismiss Credit Control with prejudice.  Credit Control opposes (Doc. 59) dismissal with prejudice.

Also, Tormenia responds (Doc. 55) to the April 22 show-cause order. Like Credit Control's attorney's fee motion, Tormenia's response fails to support the stated version of events with an affidavit or a declaration. However, the response highlights an exhibit (Doc. 43-2) showing that debt collectors transferred frequently a debt that the defendants allegedly attempted to collect. Tormenia's attorneys argue that "this case . . . has been somewhat complicated by a large number of transfers of the relevant debts and also confusion regarding what debts were being collected upon." (Doc. 55 at 4) These "complexities," the attorneys contend, "were plainly beyond [Tormenia's] counsel's control" and caused "substantial difficulties in prosecution." (Doc. 55 at 2) Further, Tormenia's attorneys justify the complaint's "'stepped' ascending allegations of call numbers" because "the total number of calls is often peculiarly within the knowledge of the debt collector," and call logs, if available, offer limited utility because debt collectors call from different numbers. (Doc. 55 at 7) According to Tormenia's attorneys, "'stepped' allegations of call numbers up to what the client has estimated they received by that defendant [allow] a plaintiff [to] obtain[] useful information very early in the case that can be used in both negotiations and in further investigation." (Doc. 55 at 7)

## DISCUSSION

Rule 11, Federal Rules of Civil Procedure, "stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule." *Donaldson v. Clark*, 819 F.2d 1551, 1555 (11th Cir. 1987) (citations and

quotations omitted).  Under Rule 11, a district court may sanction a party that files a pleading either without a "reasonable factual basis" or "in bad faith for an improper purpose."  *Attwood v. Singletary*, 105 F.3d 610, 612 (11th Cir. 1997).

Additionally, a district court holds inherent authority to sanction a lawyer and can invoke the inherent authority even if a procedural rule authorizes sanction for the same conduct.  *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002).  The inherent authority permits sanction only if the lawyer's conduct "constituted or was tantamount to bad faith."  *Thomas*, 293 F.3d at 1320 (citation and quotation omitted).  Bad faith requires "knowingly or recklessly rais[ing] a frivolous argument or argu[ing] a meritorious claim for the purpose of harassing an opponent."  *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998).

Although Tormenia's attorneys' claim to have conducted several interviews before initiating this action (Doc. 55 at 2), Tormenia's attorneys' indiscriminate parroting of the same allegations from action to action and from defendant to defendant creates skepticism about the adequacy of the attorneys' pre-suit investigation.  Nevertheless, a careful review of the complaints, the motions, the responses, and the exhibits suggests that Tormenia's attorneys possessed some factual basis for filing the complaints and were not acting in bad faith.  Accordingly, Tormenia's attorneys' conduct warrants no sanction besides dismissal of the action.  Credit Control fails to demonstrate that dismissal with prejudice will result in "clear legal prejudice."  *McCants v. Ford Motor Co.*, 781 F.2d 855, 857 (11th Cir. 1986).

Further, Credit Control is not entitled to an attorney's fee (1) under 28 U.S.C. § 1692k, which requires "bad faith;" (2) under Section 559.77, Florida Statutes, which requires absence of a justiciable issue of fact or law; or (3) under 28 U.S.C. § 1927, which requires unreasonable or vexatious multiplication of litigation.

However, the motions and responses submitted since the April 22 order raise issues that warrant comment. First, although Tormenia's attorneys assert correctly that Rule 8(d)(2), Federal Rules of Civil Procedure, permits alternative pleading, the second amended complaint's twenty-five "alternative" statements of a claim strain that rule's permission. As a result, Tormenia's alternative pleading frustrates the aim of Rule 8(a)(2)'s "short and plain statement of the claim" requirement. "Stepped"[2] pleading elongates severely the complaint and obfuscates the facts that support the plaintiff's entitlement to relief. For instance, Tormenia cites the third paragraph of the second amended complaint to aver (Doc. 62 at 5) that "the complaint can most fairly be read to allege a combined total of 300 calls." But not only does the second amended complaint allege that LVNV and Credit Control each called Tormenia "at least" 300 times (Doc. 28 at ¶¶ 49, 50, 61, 62), even the paragraph that Tormenia cites alleges that LVNV and Credit Control called Tormenia "over 300 times" (Doc. 28 at ¶ 3). The "stepped" pleading confounds any reader — particularly a

---

[2] Tormenia's response (Doc. 55) places "stepped" in quotation marks but cites no authority recognizing the practice. In fact, no authority appears to have ever used the word "stepped" before either "pleading" or "allegations."

reader obligated to prepare an informed response. And, as this action demonstrates, the confusion compounds as the case progresses.

Further, Tormenia's attorneys justify "stepped" pleading by arguing that the practice facilitates "obtaining useful information very early in the case." (Doc. 55 at 7) A complaint, however, is neither an interrogatory nor a discovery tool, both of which are regulated carefully by the Federal Rules of Civil Procedure. "[D]iscovery follows the filing of a well-pleaded complaint." *Carter v. DeKalb Cty., Ga.*, 521 Fed.Appx. 725, 728 (11th Cir. 2013) (emphasis and quotations omitted). A complaint functions to inform a defendant of the claim asserted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (explaining that Rule 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what . . . the claim is and the grounds upon which it rests'"); *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 974 (11th Cir. 2008) ("The point [of Rule 8(a)(2)] is to give the defendant fair notice of what the claim is and the grounds upon which it rests") (quotations omitted). "Stepped" pleading is unnecessary to inform a defendant of the claim. Further, a review of defendants' answers to Tormenia's attorneys' "stepped" pleadings in other actions suggests that the tactic achieves rarely, if ever, the intended goal of generating "useful" admissions.

Also, although the advisory committee's notes to Rule 11 recognize "that sometimes a litigant may have good reason to believe that a fact is true or false but

may need discovery, formal or informal, from opposing parties or third persons to gather and confirm the evidentiary basis for the allegation," the advisory committee's notes warn that the pleader should "specifically identif[y] [the allegation] as made on information and belief . . . ." And even then, pleading "on information and belief" requires caution to avoid speculation. *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) ("'Information and belief' does not mean pure speculation"); *Zuk v. E. Penn. Psych. Inst. of the Med. Coll. of Penn.*, 103 F.3d 294, 299 (3d Cir. 1996) ("discovery is not intended as a fishing expedition permitting the speculative pleading of a case first and then pursuing discovery to support it"). Several allegations in Tormenia's complaint — including allegations about the number of calls, about the use of an ATDS (Doc. 28 at ¶¶ 3, 39–64, 75, 78), and about the defendants' "corporate policy" (Doc. 44 at ¶¶ 4, 86–91) — are vague, speculative, repeated in other actions against other defendants, and not alleged "on information or belief."

Second, the proffered excuse that the confusion in this action resulted from "complexities plainly beyond [Tormenia's] counsel's control" (Doc. 55 at 2) is unsatisfactory. Rule 4-1.1, Rules Regulating the Florida Bar, obligates a lawyer to "provide competent representation," and the comments to that rule contemplate "more extensive treatment" and attention to more complex claims. In other words, a lawyer cannot shirk responsibility to marshal a client's claim by bemoaning the claim's "complexit[y]." Rather, a lawyer who agrees to represent a client accepts a duty to dedicate the time and attention necessary to resolve, or at least attempt in

good faith to resolve, a complication. Candor to an opposing party and to the tribunal can help alleviate confusion. For instance, Tormenia's motion to amend the complaint (Doc. 25) presented an early opportunity to flag the action's "complexities." Tormenia's attorneys, however, failed to seize that opportunity. To the contrary, Tormenia's unannounced changes in the second amended complaint exacerbated the confusion. Even if "complexities . . . beyond counsel's control" were a legitimate excuse, Tormenia's attorneys cannot avail themselves of the excuse.

Finally, needless acrimony litters both Tormenia and Credit Control's papers. Credit Control deprecates Tormenia's attorneys and attacks the attorneys' motives. (Doc. 54 at 6, 7, 11) Tormenia charges Credit Control's attorneys with "arrogan[ce]" and "sink[ing] to a new low" (Doc. 62 at 6–7), disparages Credit Control's Director of Litigation Management — a non-lawyer — by repeatedly placing the job title within quotation marks (Doc. 62 at 5–9, 12, 17), and crassly accuses Credit Control of pursuing "a pound of flesh."[3] Although litigation is adversarial by design and subject to contention, respect for opposing counsel is essential. The lawyers

---

[3] In Shakespeare's *The Merchant of Venice*, Shylock, a miserly moneylender, demands "a pound of flesh" as security for a loan to Antonio. As with most denizens of Shakespeare's sixteenth-century Venice, Antonio had verbally and physically abused Shylock for being Jewish, which abuse motivated Shylock's expensive security demand. When Antonio defaults, Portia — the wife of Antonio's friend, Bassanio — masquerades as a lawyer and manipulates guilefully the loan agreement's terms. Hijacking the Duke of Venice's court by her charade, not only does Portia spare Antonio his "pound of flesh," she compels Shylock to forfeit his property. A word of caution: To avoid a deplorable insult a modern writer must consider carefully the circumstance in which "pound of flesh," which evokes a notorious stereotype, is displayed and consider carefully the person at whom the writer aims.

- 11 -

representing both Credit Control and Tormenia are encouraged strongly to review thoughtfully their conduct in this action.

## CONCLUSION

Credit Control's motion for an attorney's fee (Doc. 54) is **DENIED**. Tormenia's motion to dismiss Credit Control with prejudice (Doc. 58) is **GRANTED**, and Tormenia's claims against Credit Control are **DISMISSED WITH PREJUDICE**. The clerk is directed to **CLOSE** the case and terminate any pending motion.

ORDERED in Tampa, Florida, on July 30, 2019.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE